OPINION OF THE COURT
Edward H. Lehner, J.
The issue raised here is whether a sublessor of loft space in an interim multiple dwelling (IMD) can evict her sublessee because the space occupied by the sublessee is less than 1,200 square feet and the Zoning Resolution requires a minimum of such area where there is more than one unit on a floor.
Petitioner had leased the full third floor at 29 West 26th Street. In December, 1980, she subleased the northern portion of the floor to respondent under an oral arrangement under which respondent agreed to pay $375 per month plus one half of the charges for gas and electricity. Petitioner testified that respondent indicated that he did not expect to remain for more than five months and, in any event, agreed to vacate upon being given two months’ notice.
Both parties use their respective spaces for living and work purposes, petitioner being a writer and respondent being in the export business. Petitioner testified that respondent occupies approximately 60% of the usable space on the floor (about 900 square feet) and she 40% (approximately 700 square feet). She also has the exclusive right to use certain storage space totaling 195 square feet. The *459 units have separate entrances. However, the door in the storage area located between the two units is left unlocked so that petitioner may have access to the fire escape attached to the northern wall.
When respondent declined to vacate upon being requested to do so (on notice of at least two months), petitioner served a 30-day notice asserting a termination of respondent’s tenancy as of October 31, 1982. When he did not vacate, this proceeding ensued. The petition alleges that the building is subject to chapter 349 of the Laws of 1982 (the Loft Law), and that petitioner desires the premises for her own use. She filed a “grandfathering” application with the New York City Planning Commission (CPC) on July 29, 1982, to obtain its permission for continued residential occupancy. Respondent has not filed such an application.
Section 15-22 of the Zoning Resolution, applicable to the Chelsea section of Manhattan where the subject building is located, provides that no new dwelling units shall be permitted but that dwelling units occupied on September 1, 1980, in buildings converted to residential use, where there is more than one unit on a floor, must have a minimum of “1200 square feet of interior floor area unless modified pursuant to Section 15-30.” The latter section permits the Chairman of the CPC to permit a “minor modification” of the 1,200-square-foot area requirement when the difference is less than 5%.
Here it is clear from the testimony and on examination of the floor plan that neither unit could comply with the minimum area requirement even with a “minor modification.” Petitioner maintains that since she filed a grandfather application and respondent did not, his residential occupancy can never be legalized, whereas her occupancy can be made legal if she were to occupy the entire floor.
An analysis of the rights of the parties must start with a determination of whether respondent is protected by the Loft Law. Since the building itself is concededly an IMD because of other residential occupancies, the only disputed criteria that respondent would have to satisfy to be entitled to coverage is that of subdivision 2 of section 281 of the Multiple Dwelling Law that mandates that the Zoning *460 Resolution permit “residential use as of right, or by minor modification”. Here as indicated above, it is clear that the Zoning Resolution for this Chelsea area does not permit residential use of so small a loft.
Respondent argues that it is not “the function of this court or any other court, to make an initial determination as to whether or not a particular dwelling complies with, or can comply with, the zoning resolution” as such function is properly that of the Board of Standards and Appeals, which has the expertise in interpreting the Zoning Resolution.
Although it’s hard to dispute respondent’s contention that the Zoning Resolution is a rather technical document, he has pointed out no provision thereof that it in any way brings into doubt petitioner’s position that respondent’s occupancy is unlawful under the resolution. Further, respondent has commenced no proceeding before the Board of Standards and Appeals with respect to his occupancy.
Since protection under the Loft Law is dependent on occupancy being lawful under the Zoning Resolution, the court must (there having been no request for reference to the Loft Board) determine the legality of the tenancy. The court, being convinced that respondent’s occupancy is in violation of the Zoning Resolution, is constrained to find that his occupancy is not protected by the Loft Law.
Respondent argues that even if not so protected, he may nevertheless not be evicted because of coverage under the Emergency Tenant Protection Act (ETPA; L 1974, ch 576); in essence relying on prior case law (Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807). The problem with such argument is that the Loft Law was enacted in 1982 to supersede the chaotic state of the existing law regulating loft living. As indicated in section 286 of the Multiple Dwelling Law, loft residents are to be governed by the ETPA upon the landlord bringing a building into compliance with the safety and fire protection standards of article 7-B of the Multiple Dwelling Law. Subdivision 13 of said section provides for the ETPA to become applicable to “residential tenants qualified for protection” under the Loft Law upon the declaration of an emergency by the City Council, which declaration has not as yet been adapted.
*461 The court must conclude that unless a loft resident is protected by the Loft Law, he has no statutory protection against eviction and, without a binding lease agreement, is subject to removal upon being served with 30-day notice under section 232-a of the Real Property Law.
Lastly, respondent argues that petitioner may not maintain this proceeding because respondent is not a sublessee, but the assignee pro tanto of the space occupied by him. This position is without merit. The effect of petitioner granting respondent the right to occupy a portion of the space leased to her, with rent to be paid by respondent to petitioner, was to create a sublessor-sublessee relationship. No privity was estabilished with the owner of the building. If rent were not paid it would be petitioner (and not the owner) who would have the right to bring a nonpayment proceeding.
In light of the conclusion that respondent is not protected by the Loft Law or the ETPA, the counterclaim for a rent overcharge is dismissed.
In conclusion, petitioner is entitled to a final judgment of possession. Issuance of the warrant shall be stayed to and including August 31, 1984, providing respondent pays on the first day of each month use and occupancy at the rate currently being paid. If respondent fails to make timely payment, petitioner may, on five days’ notice, move to accelerate the issuance of the warrant.