EYTAN KAUFMAN, Respondent, v AMERICAN ELECTROFAX CORP., Appellant.

EYTAN KAUFMAN, Respondent, v AMERICAN ELECTROFAX CORP., Appellant.

First Department, June 7, 1984

### APPEARANCES OF COUNSEL

*Arthur W. Baily* (*Loren Baily* with him on the brief), for appellant.

*Jan Ira Gellis* of counsel (*Gellis & Melinger,* attorneys), for respondent.

*Leonard Koerner* of counsel (*Kenneth E. Demario* and *Lisa S.J. Yee* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for New York City Loft Board, *amicus curiae.*

### OPINION OF THE COURT

FEIN, J.

The tenant-corporation (American) entered into leases dated November 8, 1976 with 36 West 15th St. Co., as landlord, for five-year terms commencing January 1, 1977 and terminating December 31, 1981. One lease covered the 3rd floor of the premises and the other the 12th floor. Each lease provided that the tenant is to "use and occupy de-

mised premises for sale of duplicating machines, supplies & allied lines and for no other purpose."

For purposes of this appeal, we are concerned only with the 12th floor.

Since execution of the lease, the building has been converted to cooperative status. Kaufman is the proprietary lessee of both premises, hence for our purposes he is the landlord, whose rights are subject to the obligations of his predecessors-in-interest to the tenant.

Kaufman is a general partner in the entity that purchased the building from 36 West 15th St. Co. and effected the conversion to a cooperative. As of the date of the trial, 9 of the 12 floors in the building were occupied by cooperators and had been converted to residential use. However, no residential certificate of occupancy had been obtained.

American is the corporate tenant under the leases, as aforesaid. A portion of the 12th floor had been converted to permanent residential use by Donald Gitlitz, the president and sole stockholder of American. Gitlitz testified that he occupied the 12th floor for combined residential and commercial occupancy since the lease's inception. The issue is whether by reason of such residential occupancy, a tenant is entitled to a lease, as afforded by the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) and applicable provisions of the Interim Multiple Dwelling Law (Loft Law) (Multiple Dwelling Law, art 7-C), and as a tenant in a cooperative conversion loft building is entitled to the tenant protection provisions of the new Loft Law (Multiple Dwelling Law, § 286, subds 1, 9).

The trial court concluded that approximately 50% of the space was converted by the tenant for residential occupancy without the knowledge, consent or acquiescence of the landlord. The court noted the absence of the individual occupant's name on the mailbox or door buzzer and that checks for rent had all been corporate checks. It was further found that Gitlitz did not use the premises as his primary residence, that his primary residence was in Westchester County, and that he "surreptitiously" engaged in residential occupancy. Accordingly, it was ruled that the tenant could not enjoy the benefits and protection conferred by article 7-C of the Multiple Dwelling Law

covering residential occupancy. The landlord was given judgment of possession. The Appellate Term affirmed for the reasons stated by the Civil Court Judge, emphasizing that tenant's residential occupancy was surreptitious.

Tenant's defense was that since the 12th floor unit was occupied for residential occupancy and met the criteria for an "Interim Multiple Dwelling" (Multiple Dwelling Law, § 281, subds 1, 2) it is entitled to the full protection of the Loft Law (Multiple Dwelling Law, art 7-C), including protection against eviction by reason of such residential occupancy, and/or termination of a lease, as well as a right to lease renewal provisions pursuant to the applicable provisions of the rent stabilization laws respecting interim multiple dwellings.

Moreover, it urged, and offered testimony to prove, that the landlord knew and consented to such residential use, and, hence, should be estopped from denying such status.

To read the statute so as to require that a residential occupancy must have been "open" and with the landlord's knowledge and acquiescence in order to obtain the benefits of the statute, is to read into the statute a meaning and purport that is not expressed therein. The history of the legislation and its background as reflected in the legislative finding under section 280 of the Multiple Dwelling Law indicate that the purpose thereof is to legalize otherwise illegal occupancies. Nothing in the statute relates to consent by the landlord or whether the conversion was done in a surreptitious manner. Nor is there anything in the statute, albeit such provisions are contained in other statutes, requiring that the premises must have been the primary residence of the occupant before he will be entitled to the protection of the statute.

The legislation was remedial, designed to eliminate and remove the long-standing conflict and problems involved in the conversion of commercial lofts by tenants for residential purposes, by legalization of these heretofore illegal lofts to the extent that they violated the commercial occupancy clauses of the tenant's lease. The Legislature intended to afford protection where such lofts qualified as *de facto* multiple dwellings, i.e., commercial premises converted to residential use, albeit they lacked a residential

certificate of occupancy and were in violation of the lease use clauses. It is precisely such premises that were afforded a protected status under law. If the legislative intent was to legalize only those lofts which had been converted in an open manner with the landlord's acquiescence and knowledge, the legislation would have so stated. Citation is unnecessary to demonstrate that the books and the courts have been filled with litigation arising prior to the enactment of the statute litigating the issue of whether the conversion was with or without the landlord's acquiescence and consent.

Subdivisions 1 and 2 of section 281 of the Multiple Dwelling Law contain the only governing criteria for qualifications, all of which have indisputably been met here. A residential unit qualifying under section 281 of the Multiple Dwelling Law is entitled to the full protection of the law, notwithstanding its otherwise illegal nature (Multiple Dwelling Law, § 283). Subdivision 1 of section 286 of the Multiple Dwelling Law protects tenants of such units from eviction. The statute is remedial and protective. There is no reference to knowledge or consent by the landlord or requirement of proof of use as a primary residence. The absence of such language in the applicable statute demonstrates that it is necessary only to meet the three conditions qualifying the heretofore illegal units and legalizing them. This is plain from the statutory language setting forth the definition of an interim multiple dwelling entitled to coverage in subdivision 1 of section 281 of the Multiple Dwelling Law: "1. Except as provided in subdivision two of this section, the term 'interim multiple dwelling' means any building or structure or portion thereof located in a city of more than one million persons which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter; and (iii) on December first, nineteen hundred eighty-one was occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another."

It is undisputed that these criteria have been met here. Thus, the tenant is entitled to remain in possession.

The order, Appellate Term, Supreme Court, First Department (Dudley, Hughes, Sullivan, JJ.), entered September 26, 1983, affirming judgment of the Civil Court, New York County (Edward H. Lehner, J.), entered October 14, 1982 granting the holdover petition of landlord (Kaufman) and awarding landlord judgment of possession of the 12th floor premises 36 West 15th Street, New York City, should be reversed on the law and the facts, and the petition dismissed, with costs.

ASCH, J. P., BLOOM and ALEXANDER, JJ., concur.

Order, Appellate Term, First Department, entered on September 26, 1983, unanimously reversed, on the law and the facts, and the petition dismissed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.