In the Matter of LOWER MANHATTAN LOFT TENANTS et al., Respondents, v NEW YORK CITY LOFT BOARD et al., Appellants.

First Department, December 11, 1984

### APPEARANCES OF COUNSEL

*Sherwin Belkin* of counsel (*Gary M. Rosenberg, Joseph Burden* and *Mitchell J. Baker* with him on the brief; *Rosenberg & Estis, P. C.,* attorneys), for New York University and another, appellants.

*Beatrice Lesser* and *Arthur Rhine* of counsel (*Jeffrey S. Ween,* attorney), for respondents.

*Nanette Dembitz* of counsel (*Francis F. Caputo, Kenneth E. DeMario* and *Lisa S.J. Yee* with her on the brief; *Frederic A. P. Schwartz, Jr.,* attorney), for New York City Loft Board and its members, appellants.

### OPINION OF THE COURT

SILVERMAN, J.

This is a proceeding to annul section J (1) (a) of the New York City Loft Board Rules and Regulations, adopted pursuant to

subdivision (a) of section 282 of the Multiple Dwelling Law. Although originally brought as a CPLR article 78 proceeding, the proceeding was converted to a declaratory judgment action by Special Term. The challenged regulation provides, insofar as is here relevant, that the landlord of an interim multiple dwelling registered with the Loft Board may bring eviction proceedings against the residential occupant (where a lease or rental agreement is not in effect) on the ground that the "unit is not the primary residence of such residential occupant" (New York City Loft Board Rules and Regulations, § J [1] [a]). Special Term annulled section J (1) (a) of the Loft Board Rules and Regulations as an exercise of legislative power exceeding the permitted limits of administrative discretion and as counter to the terms of article 7-C of the Multiple Dwelling Law.

The question before us on this appeal is whether the adoption by the New York City Loft Board of section J (1) (a) is a valid exercise of the delegated power of the Loft Board.

The statute provides in part: "The loft board shall have the following duties: (a) the determination of interim multiple dwelling status and other issues of coverage pursuant to this article * * * (d) the issuance, after a public hearing, and the enforcement of rules and regulations governing * * * compliance with this article" (Multiple Dwelling Law, § 282).

This court's language and decision in *Kaufman v American Electrofax Corp.* (102 AD2d 140) which points the other way from our decision today, did not involve the validity of a regulation or interpretation by the responsible administrative agency, the Loft Board.* As to such a regulation, the controlling standard was thus stated in *Matter of Howard v Wyman* (28 NY2d 434, 438): "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld * * * As this court wrote in the *Mounting & Finishing Co.* case (294 N. Y., at p. 108), 'statutory construction is the function of the courts "but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited" (*Board v Hearst Publications,* 322 U. S. 111, 131). The administrative determination is

---

* In its *amicus curiae* brief in the *Kaufman* case, the Loft Board, while arguing for the reversal which this court ultimately granted, distinguished between the question of applicability of the statute to the *dwelling unit* (the issue directly involved in the *Kaufman* case) and the applicability of section J (1) (a) relating to the requirement that an *occupant* otherwise protected may be evicted if the covered unit is not his primary residence.

to be accepted by the courts "if it has 'warrant in the record' and a reasonable basis in law" ' ".

The administrative agency's powers in this respect are of course not unlimited. "It is well established that in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute (*Matter of Jones v Berman,* 37 NY2d 42). Nor may an agency promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language". (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 595.)

In our view, the Loft Board's interpretation is not "out of harmony with or inconsistent with the plain meaning of the statutory language", and should be sustained under the rule of *Matter of Howard v Wyman (supra).*

We do not find any statutory language whose "plain meaning" bars the Loft Board's interpretation; nowhere does the statute say that tenants shall be protected whether or not the premises are occupied as a primary residence.

Consideration of the history and purpose of the Loft Law, and its relation to other statutes for the protection of tenants' occupancy, indicates that the Loft Board regulation is not "out of harmony" with the statute. Before the enactment of the Loft Law an anomalous situation existed. Largely because of "the acute shortage of housing" (Multiple Dwelling Law, § 280) there was increasing use for residential or mixed residential and working purposes of commercial properties which did not meet the requirements of a certificate of occupancy for residential properties. As a result (a) landlords were frequently unable to collect rents that both parties had agreed the landlord should receive, (b) residential tenants lived in substandard accommodations, and (c) residential tenants were under threat of eviction because their leases were expressly limited to commercial use though both landlord and tenant knew that there was also to be residential occupancy, and the tenant had usually improved the property for this purpose. To meet this anomalous situation, the Legislature enacted the Loft Law (Multiple Dwelling Law, art 7-C) and created the Loft Board to administer the law.

Generally (disregarding premises covered by the Loft Law), a residential tenant whose lease expires can be required to vacate the premises unless he is protected by rent control or rent stabilization; and both of those rent-protection systems limit their protection to tenants who occupy the premises as their

primary residence. (Emergency Tenant Protection Act of 1974 [L 1974, ch 576, § 4], § 5, subd a, par [11], as added by L 1983, ch 403, § 55; Rent Stabilization Law [Administrative Code of City of New York], § YY51-3.0, subd a, par [1], cl [f]; Local Emergency Housing Rent Control Act [L 1962, ch 21, § 1], § 5, as amd; Administrative Code, § Y51-3.0, subd e, par 2, cl [i], subcl [10].) Thus, under the determination appealed from invalidating the primary residence provision of the Loft Board Regulations, loft residents become the only class of residential tenants in the State of New York who have the right to remain in the premises after the expiration of their leases, although the premises are not their primary residence. Such an exception does not appear to be fairly related to the anomalous situation which the Loft Law and the Loft Board were created to meet.

Indeed, the Loft Law itself contains indications of its harmonious relationship with other rent regulation laws. Thus, subdivision 13 of section 286 of the Multiple Dwelling Law provides: "The applicability of the emergency tenant protection act of nineteen seventy-four to buildings occupied by residential tenants qualified for protection pursuant to this article shall be subject to a declaration of emergency by the local legislative body."

In accordance with this statute, the New York City Council passed a declaration of emergency declaring the necessity of applying the Emergency Tenant Protection Act of 1974 to units qualified for protection under article 7-C of the Multiple Dwelling Law (the Loft Law) (New York City Council Resolution No. 369, dated April 26, 1983, New York City Record, vol CX, p CC 10 [No. 32999], Supp for April 26, 1983).

The New York City Board of Estimate by resolution of October 22, 1981 had requested protective legislation for loft tenants, and stated that "[l]oft tenants are not now afforded protection as other New York City residential tenants are." There was no indication that loft tenants were to be afforded greater protection.

Further, the "acute shortage of housing" referred to in the legislative findings of the Loft Law (Multiple Dwelling Law, § 280) can hardly be as acute for those who have another primary residence as it is for those who do not.

In the circumstances, we think it was not irrational for the Loft Board to say that residents of interim multiple dwellings covered by the Loft Law should have the same protection that they would have had if their premises were not anomalous loft

residences, i.e., protection of primary residence only. The purposes of the Loft Law are not furthered by extending its protections to nonprimary residents, or so the Loft Board could find.

"Order and judgment" (one paper), Supreme Court, New York County (B. Wright, J.), entered February 2, 1984 should be modified, on the law, to the extent of striking all decretal paragraphs of the "order and judgment" except for the second decretal paragraph, and declaring that section J (1) (a) of the Rules and Regulations of the New York City Loft Board is valid, and the "order and judgment" otherwise affirmed, without costs.

SANDLER, J. P., SULLIVAN and MILONAS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 2, 1984, unanimously modified, on the law, to the extent of striking all decretal paragraphs of the order and judgment except for the second decretal paragraph, and declaring that section J (1) (a) of the Rules and Regulations of the New York City Loft Board is valid, and the order and judgment is otherwise affirmed, without costs and without disbursements.