OPINION OF THE COURT
Norman C. Ryp, J.
COVERAGE OR COMPLIANCE?
Which comes first before the New York City Loft Board? An issue of bifurcated first process! This CPLR article 78 petition seeks to preliminarily and permanently enjoin and annul New York City Loft Board (Loft Board) Order No. 188, dated March 6, 1985, which determined that premises No. 101 West 25th Street, New York, N. Y. (subject building) also known as No. 655 Avenue of the Americas, are covered residential units as "interim multiple dwellings” pursuant to Multiple Dwelling Law, article 7-C, § 281.
This petition is brought by the owner of subject building, challenging the coverage determination of Loft Board Order No. 188. In support, petitioner contends primarily that residential use of subject building, since it is physically undersized, cannot possibly be legalized as an "interim multiple dwelling” without reconstruction of the entire building at *943 unlimited cost, to comply with New York City Zoning Resolution (ZR) §§ 15-22 and 15-30, which specify the minimum floor area requirements for such dwelling units.
In opposition, respondent Loft Board contends that the Multiple Dwelling Law § 281 coverage issue was properly decided and is separate and distinct from legalization issues (i.e., safety and fire protection alterations), and that petitioner has neither attempted to exercise all available options to effect legalization nor sought administrative review by the Loft Board to see if coverage should be terminated.
On December 7, 1983, an application was filed with the Loft Board by three tenants of subject building seeking coverage as an interim multiple dwelling, to which petitioner herein interposed a verified answer alleging, inter alia, that each unit for which coverage was sought was undersized according to the relevant zoning resolutions. The Loft Board’s Order No. 188, while recognizing the undersized nature of the loft spaces involved, nevertheless found the three units covered under the Multiple Dwelling Law and ordered the owner (petitioner) to register with the Loft Board. The Loft Board further held that the conflict between the zoning resolutions and the floor space was a problem for consideration and resolution as part of the process of altering subject building to comply with safety and fire codes.
This court notes that petitioner does not contest the Loft Board’s findings with respect to Multiple Dwelling Law § 281 (1), relating to the residential tenancy issues, but rather, has focused upon Multiple Dwelling Law § 281 (2) (i) which, by definition, limits the term "interim multiple dwelling” to buildings in which the "local zoning resolution permits residential use as of right, or by minor modification”.
The following data, relevant and necessary for a conclusive determination of the instant petition, was not provided in the motion papers: the exact dimensions of each and every space on each and every floor of subject building including dwelling areas, storage areas, public areas, etc.; certificate of occupancy; and copies of all leases for the "covered” units relevant to Multiple Dwelling Law § 281 (1) dates, including details on the chain of ownership of subject building from said dates to the present day.
The relevant ZR §§ 15-22 and 15-30 require 1,200 square feet minimum unit size, yet it appears uncontroverted that each unit is significantly below such minimum size: (a) second *944 floor front loft occupied by Seabury/Gabriel is 800 square feet; (b) fourth floor front loft occupied by Ciupak is 800 square feet; and (c) fourth floor rear loft occupied by Falk is approximately 240 square feet.
It seems improbable, if not impossible, that 800 square feet and especially 240 square feet each could be stretched to 1,200 square feet even with a significant "alteration” of subject building’s interior as covered by the Loft Board’s Proposed Code Compliance Regulations, dated June 21, 1985. (NYC Record, vol cxii, p 1520, No. 33498, § V.) Also, significant alteration expenses could be considered unjustifiable hardship rendering legal residential conversion infeasible, allowing petitioner an exemption for subject building under Multiple Dwelling Law §285 (2) (ii). While no floor plan is presently available to the court, it appears clear that none of these units could comply with the minimum size requirement of ZR § 12-22 (1,200 square feet) even were the City Planning Commission to grant a ZR § 15-30 "minor modification” which permits a 5% variance from the ZR § 12-22 requirement. (Aguilar v Rabin, 123 Misc 2d 458 [Civ Ct, NY County 1984], affd 128 Misc 2d 428.)
The Loft Board’s determination that subject building is covered by the Multiple Dwelling Law thus, at best, appears bureaucratically cumbersome, inviting infinite process, in that the very definition of an "interim multiple dwelling” in Multiple Dwelling Law § 281 (2) (i) will likely exclude subject building, and expenditures by petitioner for Loft Board review would be wasteful and inefficient where, as here, the Loft Board was fully aware of the dwelling unit size problem in the first instance.
While acknowledging the expertise of the Loft Board in this field, it appears that the dwelling unit size should be a "coverage” issue in light of the definition of "interim multiple dwelling” as set forth in Multiple Dwelling Law § 281, in its entirety. (See, Loft Realty Co. v Aky Hat Corp., 123 Misc 2d 440, 445 [Civ Ct, NY County 1984].)
The Loft Board had before it data on the square footage of these units and noted in its opinion in Order No. 188 that all the residential units were under the size required by the Zoning Resolution. Yet, the Loft Board concluded its opinion on this issue by curiously finding that the undersize problem is not a coverage issue. "Instead, it is an issue which would have to be resolved as part of the process of making the units *945 code compliant.” (Order No. 188, p 4; emphasis added.) By what perpetual process could 800 square feet, or more extraordinarily 240 square feet, be made "code compliant”? The Loft Board’s refusal to meaningfully address this issue in Order No. 188 unnecessarily and unreasonably creates further, if not perpetual, bureaucratic processes and likely proceedings. The reason(s) is entirely unclear why petitioner should be subjected to such processing as reflected by respondent’s agency assertion that petitioner may seek administrative review by the Loft Board to determine if coverage should be terminated. This is consistent with fairness, administrative and judicial economy.
Thus, petitioner’s application is partly granted only to the extent of returning the present issue to the Loft Board for a full determination on all issues defining coverage, including a precise finding, subject to CPLR article 78 review, how the subject dwelling units can possibly come within the definition of "interim multiple dwelling” as set forth not only in Multiple Dwelling Law § 281 (1), but also Multiple Dwelling Law § 281 (2) (i), relative to the applicable Zoning Resolution (ZR §§ 15-22, 15-30) for Northeast Chelsea (see, Kaufman v American Electrofax Corp., 102 AD2d 140, 143 [1st Dept 1984]).
Accordingly, for the foregoing reasons, the petition is granted to the extent indicated hereinabove.