OPINION OF THE COURT
Harold Baer, Jr., J.
Plaintiff, Aronson, seeks a declaration that he is entitled to continued residential occupancy of his loft, notwithstanding the "commercial” form of his expired lease. The original complaint, which was served on May 20, 1982, contained a cause of action for such declaratory relief based upon plaintiff’s allegation that the subject building constituted a de facto multiple dwelling. In January 1984, plaintiff moved to amend his complaint to include a claim that the subject building *273 constitutes an "interim multiple dwelling”, pursuant to Multiple Dwelling Law article 7-C. By order, dated July 5, 1984, Justice Ascione granted plaintiff’s motion to amend his complaint.
Defendant, Rappaport, maintains that he is now entitled to summary judgment dismissing the cause of action which alleges that the premises are a de facto multiple dwelling. Defendant asserts that the rights and protections previously afforded to residential occupants of de facto multiple dwellings have been superseded by the enactment of article 7-C and the statutory rights and protections contained therein. Accordingly, defendant argues that there is no longer a viable cause of action for a declaration that premises are a de facto multiple dwelling.
Cases which have dealt with the issue of whether loft tenants can be afforded residential protection as occupants of de facto multiple dwellings subsequent to the enactment of Multiple Dwelling Law article 7-C have held both ways. Several older cases have held that the issue of whether tenants were protected as the occupants of a de facto multiple dwelling was properly before the court, notwithstanding the fact that Multiple Dwelling Law article 7-C by its terms took effect immediately and was to have retroactive application. (Thomas Loft Tenants Assn. v Lawrence Co., 117 Misc 2d 360 [Sup Ct 1982]; see, Haddad Corp. v Coco, index No. L&T 99085/81; Olsen v Hadway Realty Co., index No. 12019/81.) These cases reached their conclusions without regarding the issue of whether article 7-C supersedes the protections previously afforded to occupants of de facto multiple dwellings.
Several more recent cases have dealt directly with the issue and have concluded that the tenant protections contained in Multiple Dwelling Law article 7-C supersede the protections previously afforded to occupants of de facto multiple dwellings. In Aguilar v Rabin (123 Misc 2d 458, 460 [NY City Civ Ct 1984]), the court stated that: "the Loft Law was enacted in 1982 to supersede the chaotic state of the existing law regulating loft living. As indicated in section 286 of the Multiple Dwelling Law, loft residents are to be governed by the [Emergency Tenant Protection Act] upon the landlord bringing a building into compliance with the safety and fire protection standards of article 7-B of the Multiple Dwelling Law. Subdivision 13 of said section provides for the ETPA to become applicable to 'residential tenants qualified for protection’ under the Loft Law upon the declaration of an emergency by the *274 City Council”. The court concluded that unless a loft resident is protected by the Loft Law, he has no statutory protection against eviction. (Aguilar v Rabin, supra, at p 460.)
Similarly, in Petrics v Shibata (12 HCR 128A [1984]) petitioner sought the removal of a loft tenant. The court found that the building was a de facto multiple dwelling, but the petition was dismissed on account of petitioner’s failure to prove an effective multiple dwelling registration. Subsequently, the Legislature enacted Multiple Dwelling Law article 7-C to delineate the substantive rights and obligations of loft tenants and landlords. On review the court remanded the proceeding for an adjudication of the parties’ rights pursuant to the Loft Law. "It would seem that tenant’s right to remain in continued occupancy now turns upon whether he is a protected occupant of an interim multiple dwelling.” (Petrics v Shibata, 12 HCR, at p 128A.)
At the time article 7-C was enacted, a serious public emergency existed as a result of a shortage of housing. An increasing number of commercial and manufacturing buildings were being converted to residential use without compliance with local laws regarding minimum housing maintenance standards. As a result of the uncertain status of these tenants, the courts were increasingly burdened with disputes between landlords and tenants regarding their respective rights and obligations. Multiple Dwelling Law article 7-C created a new category of building entitled "interim multiple dwelling” and created a Loft Board with full authority to set rents and make adjustments thereto. The clear purpose of the statutory enactment was to confer upon the Loft Board all issues with respect to coverage, including rent disputes, and to remove these matters from the courts. (Thomas Loft Tenants Assn. v Lawrence Co., 117 Misc 2d 360, 367, supra.) In light of the legislative intent and modern case law, it appears that article 7-C was intended to supersede the protections previously afforded to occupants of de facto multiple dwellings, and therefore, the concept of de facto dwelling departed with the coming of the Loft Law. Accordingly, defendant’s motion for summary judgment dismissing plaintiff’s cause of action which alleges that the premises are a de facto multiple dwelling should be granted.
Turning to the request by defendant that he or his agent be allowed to enter the premises for the purpose of measuring the premises, my reading of the cases allows such an inquiry and it shall take place on May 5, 1986, at 2:00 p.m. in the *275 presence of the attorneys for the parties. (See, Nirco Investors Corp. v New York City Loft Bd., 129 Misc 2d 942 [Sup Ct, NY County 1985].)
Finally, the eleventh cause of action adequately states a cause for rescission. (See, Real Property Law §§ 235-c, 235-d; Lane v Mercury Record Corp., 21 AD2d 602, affd 18 NY2d 889.)