[891 NYS2d 899]

In the Matter of STEVEN GAROFOLO, Petitioner, v FELIX ROSA, Chairman of the New York State Board of Parole, Respondent.

Supreme Court, Kings County, December 24, 2009

APPEARANCES OF COUNSEL

*Bennet Goodman,* Bronxville, for petitioner. *Andrew M. Cuomo, Attorney General,* New York City (*Christopher L. Van De Water* of counsel), for respondent.

**OPINION OF THE COURT**

Arthur M. Schack, J.

Petitioner Steven Garofolo seeks an order, pursuant to article 78 of the CPLR, vacating the July 8, 2008 decision of the New York State Board of Parole (Parole Board) denying him parole and granting him either immediate release on parole or a de novo parole hearing. Respondent Felix Rosa, Chairman of the Board of Parole, opposes the petition and seeks its dismissal.

Petitioner Garofolo contends that he was wrongfully denied a discretionary parole release by the Parole Board. The basis of the instant petition is that the Parole Board acted unlawfully because: the term of Parole Commissioner Jennifer Arena, one of the three parole commissioners at the July 8, 2008 hearing, had expired; certain comments of Parole Commissioner James B. Ferguson during petitioner's hearing demonstrated reliance on matters not within the purview of the Parole Board; and, the Parole Board's denial of parole release was based solely on petitioner's underlying criminal offenses to the exclusion of all other statutorily mandated factors of consideration, which, pursuant to *Matter of Russo v New York State Bd. of Parole* (50 NY2d 69, 77 [1980]), is "irrationality bordering on impropriety."

Rosa and the Parole Board assert that the July 8, 2008 denial of parole to petitioner Garofolo was lawful, arguing that: Commissioner Arena could continue to serve as a holdover commissioner; and, the Parole Board's determination not to release petitioner Garofolo was lawful and should not be set aside.

After hearing oral argument and carefully considering all papers submitted, the court denies the instant article 78 petition of petitioner Garofolo. The court, as will be explained below, finds that the Parole Board acted within the law in its denial of discretionary parole release to petitioner Garofolo.

## Background

Petitioner Garofolo, an inmate in the care and custody of the New York State Department of Correctional Services since 1977,

is currently incarcerated at Clinton Correctional Facility, Dannemora, New York. He was convicted in 1977 of rape in the first degree, sodomy in the first degree and burglary in the second degree for his August 29, 1975 attack on an estranged girlfriend. For these crimes, petitioner Garofolo received indeterminate concurrent sentences of 0 to 25 years each on the rape and sodomy charges and 0 to 15 years on the burglary charge. Also, in 1977, he was convicted of two counts of murder in the second degree for his October 26, 1976 killing of Catherine Wilkinson with a police baton. Petitioner Garofolo dumped the victim's body in a wooded area in Suffolk County, near a bar he went to with his victim. For the murder convictions, he was sentenced to 25 years to life on each murder count, to be served concurrently with the rape, sodomy and burglary sentences.

Petitioner Garofolo had his initial Parole Board release interview on or about October 22, 2000, which was his earliest possible release date. At that time, he was denied discretionary parole release. Then, he had three subsequent parole release interviews and was denied parole at each interview. Garofolo, after his July 8, 2008 parole denial, perfected and filed an administrative appeal which was ultimately denied. After exhausting his administrative remedies he appealed his parole denial by commencing on May 22, 2009 the instant article 78 proceeding.

Petitioner challenges the Parole Board's jurisdiction to conduct the July 8, 2008 parole hearing, in that: Commissioner Arena's term had expired prior to the hearing and she sat on petitioner's panel as a holdover appointment; and, the Parole Board's denial was based upon comments made at the hearing by Commissioner Ferguson about matters not within the purview of the Parole Board.

Petitioner, at the July 8, 2008 parole interview, conducted at the Arthur Kill Correctional Facility, Staten Island, New York (exhibit D of verified answer—minutes of parole interview), talked extensively about how he has become a changed person in more than 30 years of incarceration (*id.* at 12-17). In paragraphs 21 and 22 of the instant petition, petitioner objects to Commissioner Ferguson's comments, which he claims negated petitioner's rehabilitative accomplishments and demonstrated Commissioner Ferguson's reliance on matters outside the Parole Board's statutory authority. Commissioner Ferguson stated (exhibit D of verified answer—minutes of parole interview, at 18, lines 2-20):

"There's a death that in some societies would be required to pay with your life. There are statutes now in place where people get life and never get parole. I just want to make sure that you understand you're talking about believing in you and giving you a chance. I want to make sure that you understand that all of your prior denials may not have been denials may not have been based because people didn't believe in you or think you've changed. What you need to understand is the nature of these offenses also is a factor that was considered in those boards, as it has to be considered in this board today, and sometimes that is an extremely heavy burden to move, regardless of how successful you've been inside, how much insight you have and how it may appear that you are a completely changed person. That's something that was considered in the other boards, and we have to consider it today too."

However, petitioner fails to note that Commissioner Ferguson told petitioner (*id.* at 19, lines 7-11), that "[y]ou've accomplished a lot since you've been incarcerated. You've give[n] us a lot to consider. There's a lot of positive things you've done since you've been incarcerated, and we'll give you a fair shake."

Commissioner Ferguson announced the Parole Board's decision (*id.* at 20, line 5 through 21, line 9):

"Parole denied. Hold 24 months, 5-2010.

"After a review of the record and interview, the panel has determined that if released at this time, there is a reasonable probability that you would not live and remain at liberty without again violating the law, and your release would be incompatible with the welfare of society and would so deprecate the serious nature of the crime as to undermine respect for the law.

"This decision is based on the following factors: Your instant offenses, murder in the second degree, two counts, rape first degree, sodomy first degree and burglary second degree, in which you beat to death your teenage girlfriend because she was begging you not to rape her. In a prior offense you broke down the door of your victim and then repeatedly raped and then sodomized her.

"Note is made of your extensive educational accomplishments, your remorse, impressive disciplin-

ary record and all other required statutory factors.

"Despite the pleas and cries of your victims, you continued with your horrific crime showing them no mercy. Your brutal offenses have deprived a young teenager of her life and her family has been forever impacted by your heinous crime. Your rape victim has had her life forever scarred. Parole is denied. (Commissioners concur.)"

The instant petition claims, in paragraph 37, that

"contrary to the conclusions reached by the parole board, the record reveals that the petitioner, now fifty-two years old and hav[ing] spent some thirty-three years behind bars, is obviously a completely different person [than] when he was first incarcerated, and indications point to . . . someone who is now ready, willing and able to rejoin society as a productive member."

However, petitioner has failed to show that the July 8, 2008 decision of the Parole Board is arbitrary, capricious, an abuse of discretion or "irrationality bordering on impropriety."

### Authority of "Holdover" Parole Commissioners

Petitioner Garofolo argues that the presence of "holdover" New York State Parole Commissioner Jennifer Arena, whose term of office had expired prior to petitioner's July 8, 2008 parole hearing, tainted the hearing decision. However, Public Officers Law § 5 states:

"Every officer except a judicial officer, a notary public, a commissioner of deeds and an officer whose term is fixed by the constitution, having duly entered on the duties of his office, shall, unless the office shall terminate or be abolished, hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified."

Thus, petitioner's argument that the Parole Board or its Commissioners proceeded in excess of its or their authority or without jurisdiction is wholly without merit.

Further, pursuant to Executive Law § 259-b (4), "members of the state board of parole shall not hold any other public office." Therefore, a parole commissioner, who by statute cannot hold office as a judicial officer, or a notary public, or a commissioner of deeds, and is not an officer whose term is fixed by the State

Constitution, may hold over until a successor takes office. While members of the Parole Board are not judicial officers, they possess functions which are considered quasi-judicial in nature. It does not necessarily follow that parole commissioners are judicial officers. (*Tarter v State of New York*, 68 NY2d 511 [1986].) Further, neutrally positioned government officials performing quasi-judicial functions do not attain the status of judicial officers. (*Arteaga v State of New York*, 72 NY2d 212 [1988].)

Thus, Commissioner Arena's authority to serve as a parole commissioner after the expiration of her term appropriately falls within the statutory holdover provision of Public Officers Law § 5. Moreover, petitioner's claims that Commissioner Arena's holdover status created a conflict of interest and tainted the Parole Board's decision is unavailing for lack of any evidentiary support from the record. It is purely speculative and fails as a matter of law.

## Article 78 Review of Parole Board's Determination

The standard for judicial review in an article 78 proceeding is "to scrutinize the record and determine whether the decision of the administrative agency is supported by substantial evidence and not arbitrary and capricious (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck*, 34 NY2d 222):" (*Matter of Marsh v Hanley*, 50 AD2d 687, 687 [3d Dept 1975]; *see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331 [1995]; *Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d 269 [1972]; *Sewell v City of New York*, 182 AD2d 469 [1st Dept 1992], *lv denied* 80 NY2d 756 [1992].) If the reviewing court finds that the agency determination has a rational basis, supported by substantial evidence, such determination must be sustained. (*Matter of Halperin v City of New Rochelle*, 24 AD3d 768 [2d Dept 2005]; *Matter of Dawson v Zoning Bd. of Appeals of Town of Southold*, 12 AD3d 444 [2d Dept 2004].)

It is axiomatic that "the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]; *see Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545 [1997]; *Matter of Bernstein v Toia*, 43 NY2d 437 [1977]; *Matter of Lower Manhattan Loft Tenants v New York*

*City Loft Bd.*, 104 AD2d 223 [1st Dept 1984], *affd* 66 NY2d 298 [1985]; *Matter of Tommy & Tina, Inc. v Department of Consumer Affairs of City of N.Y.*, 95 AD2d 724 [1st Dept 1983], *affd* 62 NY2d 671 [1984].)

With respect to an article 78 review of a Parole Board determination, the Court of Appeals in *Matter of Silmon v Travis* (95 NY2d 470, 476 [2000]) instructed:

> "Our jurisprudence also is well settled as to the authority of the Parole Board. *Judicial intervention is warranted only when there is a 'showing of irrationality bordering on impropriety'* (*see, Matter of Russo, supra*, 50 NY2d, at 77; *Matter of Briguglio v New York State Bd. of Parole*, 24 NY2d 21, 29). Thus, we review whether the Board's decision to deny parole was arbitrary or capricious." (Emphasis added.)

Article 12-B of the Executive Law (§ 259 *et seq.*) details the authority and duties of the New York State Division of Parole and the Parole Board. Executive Law § 259-i, "Procedures for the conduct of the work of the state board of parole," describes, in section 259-i (2) (c) (A), the standards to be considered by the Parole Board in determining if an inmate should be released on parole:

> "Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision . . . the following [shall] be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the

department of correctional services . . . ; [and] (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; . . . Notwithstanding the provisions of this section, in making *the parole release decision for persons whose minimum period of imprisonment was not fixed pursuant to the provisions of subdivision one of this section* [inmates like petitioner Garofolo], *in addition to the factors listed in this paragraph the board shall consider the factors listed in paragraph (a) of subdivision one of this section.*" (Emphasis added.)

The above-mentioned Executive Law § 259-i (1) (a) lists the guidelines to be considered by the Parole Board and

"shall include (i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement."

Further, section 259-i (1) (a) states that

"[n]otification of [the Parole Board's] determination and of any subsequent determinations and of the reasons therefor shall be furnished in writing to the sentenced person and to the person in charge of the institution as soon as practicable. Such reasons shall be given in detail and not in conclusory terms."

The July 8, 2008 subject parole hearing minutes demonstrate that the Parole Board considered the necessary statutory factors in weighing whether to grant discretionary parole release to petitioner Garofolo. The Parole Board discussed with petitioner: his upbringing and family history (at 2-3); the violent nature of the underlying crimes (at 4); why he committed his crimes, any mitigating factors, his remorse and his rehabilitative efforts (at 5-7); his support network if released (at 9); his educational attainments while incarcerated (at 8-9); his participation in sex offender programs and substance abuse counseling (at 9); his disciplinary record (at 10); his plans, if

released, for living arrangements and work (at 11-12); and any matter he thought should be brought to the attention of the Parole Board (at 11-16).

Petitioner Garofolo, in support of his request for relief, notes that an inmate's exemplary conduct during his or her imprisonment may be considered as a relevant factor during his parole hearing. However, as previously observed, "[d]iscretionary release on parole shall not be granted merely as a reward for good conduct." (Executive Law § 259-i [2] [c] [A].) Further, "while the relevant statutory factors must be considered, it is well settled that the weight to be accorded to each of the factors lies solely within the discretion of the Parole Board." (*Matter of Garcia v New York State Div. of Parole*, 239 AD2d 235, 239 [1st Dept 1997]; *see Matter of Klein v New York State Div. of Parole*, 202 AD2d 319, 320 [1st Dept 1994]; *Matter of McKee v New York State Bd. of Parole*, 157 AD2d 944, 945 [3d Dept 1990]; *People ex rel. Herbert v New York State Bd. of Parole*, 97 AD2d 128, 133 [1st Dept 1983].) Petitioner Garofolo's claim that he should be released because of his successful efforts at rehabilitation does not pass muster in the face of the statutory framework. Successful rehabilitation effort is but one of the many factors to be considered by the Parole Board in determining if an inmate is granted discretionary parole release.

Further, petitioner Garofolo's denial of parole release due to the severity of his crimes is within the sound discretion of the Parole Board. "The Board's determination that the petitioner's positive achievements were outweighed by the serious and repetitive nature of her crimes was within its discretion and is not subject to judicial review." (*Matter of Wright v Travis*, 284 AD2d 544 [2d Dept 2001].) Similarly, "[t]he Board based its determination upon the extraordinarily serious and violent nature of the crimes for which the petitioner was incarcerated, which is a sufficient ground to deny parole release." (*Matter of Secilmic v Keane*, 225 AD2d 628, 629 [2d Dept 1996].) In an earlier appeal by petitioner Garofolo of his denial of parole in 2006, the Appellate Division, Third Department, affirmed the denial in *Matter of Garofolo v Dennison* (53 AD3d 734 [3d Dept 2008]). The Court held (at 734-735) that

"inasmuch as the Board appeared to have placed greater weight on the violence and brutality of defendant's conduct than on the other statutory factors, we note that it was not required to weigh each factor equally, nor was it required to explicitly articulate the weight it accorded to each factor." (*See*

*Matter of Morales v Travis*, 260 AD2d 710 [3d Dept 1999]; *Matter of Hawkins v Travis*, 259 AD2d 813 [3d Dept 1999]; *Matter of Waters v New York State Div. of Parole*, 252 AD2d 759 [3d Dept 1998]; *Matter of Sweeper v State of N.Y. Exec. Dept. Bd. of Parole*, 233 AD2d 647 [3d Dept 1996]; *Matter of Secilmic v Keane, supra*; *Matter of Weir v New York State Div. of Parole*, 205 AD2d 906 [3d Dept 1994]; *Matter of Walker v Travis*, 252 AD2d 360 [1st Dept 1998]; *Matter of Dudley v Travis*, 227 AD2d 863 [3d Dept 1996].)

In *Matter of Klein v New York State Div. of Parole* (202 AD2d 319 [1994]), Klein murdered a woman and dumped her body into a swamp, while Garofolo dumped his victim into a wooded area. The *Klein* Court held (at 319-320) that "[t]he Parole Board's decision not to grant parole to petitioner . . . does not rise to the level of 'irrationality bordering on impropriety' (*Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 77)." (*See Matter of Comfort v New York State Div. of Parole*, 68 AD3d 1295 [3d Dept 2009]; *Matter of Trobiano v State of N.Y. Div. of Parole*, 285 AD2d 812 [3d Dept 2001]; *Matter of Larrier v New York State Bd. of Parole Appeals Unit*, 283 AD2d 700 [3d Dept 2001]; *Matter of Anthony v New York State Div. of Parole*, 252 AD2d 704 [3d Dept 1998]; *Matter of Carrion v New York State Bd. of Parole*, 210 AD2d 403 [2d Dept 1994].)

Therefore, the Parole Board made its July 8, 2008 determination with respect to petitioner Garofolo in accordance with pertinent statutory requirements. The grounds for parole denial stated by the Parole Board at petitioner's July 8, 2008 hearing are sufficient to support the Parole Board's denial of parole to petitioner Garofolo. Petitioner Garofolo has failed to demonstrate to the court that the July 8, 2008 decision of the Parole Board is arbitrary, capricious, an abuse of discretion or "irrationality bordering on impropriety."

## Conclusion

Accordingly, it is ordered that the instant petition of petitioner Steven Garofolo, pursuant to article 78 of the CPLR, to vacate the July 8, 2008 decision of the New York State Board of Parole which denied petitioner Steven Garofolo discretionary parole release and to grant petitioner Steven Garofolo either immediate parole release or a de novo parole hearing, is denied.