OPINION OF THE COURT
Edward H. Lehner, J.
The basic issue presented on the motions before the court is whether a loft tenant has the right, which has been statutorily denied to all other residential tenants, to assign a lease in violation of its terms.
Here the tenant, who was an occupant of a residential loft subject to article 7-C of the Multiple Dwelling Law (the Loft Law), advised the landlord on August 12, 1983 that he: i) wished to assign his lease; ii) had been offered $19,000 for his improvements by the proposed assignee; and iii) pursuant to subdivision 6 of section 286 of the Multiple Dwelling Law, offered to sell the improvements *382 for that amount to the landlord. The landlord in reply on August 30 did not state any objection to the assignment, but claimed that the fair market value of the improvements was only $7,500, and offered that amount. On September 7, 1983 the tenant rejected the landlord’s offer and informed it that the assignment would be effective on September 30. In February this holdover proceeding was instituted alleging a termination based on an assignment in violation of the provisions of the subject lease.
Before the court is the tenant’s application for a stay pending a determination of the controversy by the Loft Board (the Board), and petitioner’s cross motion for summary judgment.
At oral argument tenant asserted that the right to sell improvements statutorily implies a right to assign a lease to anyone he wishes notwithstanding the prohibition contained in his lease. The court disagrees. Subdivision 1 of section 226-b of the Real Property Law, as amended (L 1983, ch 403, § 37), specifically provides that an owner can unconditionally withhold consent to an assignment (as distinguished from a sublease). Subdivision 8 of that section states that nothing in the section “shall be deemed to prevent or limit the right of a tenant to sell improvements” pursuant to the Loft Law (Multiple Dwelling Law, § 280 et seq.).
Providing a right to sell fixtures is not granting an unconditional right to sell a leasehold interest. If the tenant’s position were correct, a loft tenant would have the right to transfer possession without any consideration of the background or financial condition of the incoming tenant, information with respect to which is required upon a subleasing under section 226-b of the Real Property Law.
In its regulations with respect to subleasing dated August 23,1983, the Board provides that the right to sublease is subject to the procedures set forth in section 226-b of the Real Property Law. In its proposed regulations (not as yet adopted), for which comment was requested by January 16, 1984, procedures are proposed for the purchase of fixtures and the transfer of a leasehold, which provide a method for the landlord to object to an incoming tenant.
*383 Although the Board does not as yet have its procedures for handling disputes with respect to the sale of fixtures in place, the controversy with respect to the value of the improvements is now before it on application of the tenant.
With the foregoing in mind, in analyzing the issue it becomes evident that the right to sell improvements could become a near worthless right if an owner could both i) decline to purchase an outgoing tenant’s improvements and, ii) refuse to consent to an assignment to the incoming tenant. In such a situation the improvements (if removable at all), would probably be costly to remove and have little value thereafter. Therefore, as a practical matter, they would most likely become the owner’s property without the payment of any consideration, and the owner would be in a position to obtain the value of the improvements left behind through future rentals to be paid by an incoming tenant selected by the landlord.
The intent of the Legislature in granting the right to sell improvements was to avoid a windfall to owners. Therefore, it would seem that if a landlord refused to purchase the improvements, the type of procedure suggested by the Board in the afore-mentioned proposed regulations to permit the transfer to a suitable assignee would appear appropriate.
However, if the owner agreed (which it has not) to purchase the improvements at the price fixed by the Board, then the right to obtain the value thereof would be preserved. It is this right, and not the ability to profit by the sale of the leasehold estate, that the Legislature sought to preserve.
If the outgoing tenant had the unfettered right to assign to anyone he pleased regardless of the landlord’s agreement to purchase, we would then be permitting such tenant to profit from the sale of the leasehold. The elimination of the right to assign in the Omnibus Housing Act of 1983 (L 1983, ch 403) shows an intent to eliminate such a practice. The findings contained therein refer to the “profiteering practice on the part of certain holders of apartment leases.”
*384 Here the landlord has not agreed to pay the price eventually fixed by the Board, there apparently being no regulation mandating such agreement. Hence if the Board fixes the fair market value at an amount higher than that previously offered by the landlord, there would be no requirement that it purchase. If the landlord declined to purchase at such higher amount, it would not, as indicated above, be consistent with the legislative intent to both permit it to so decline and without reason refuse to authorize the transfer of the leasehold. Such a right would be a severe “limit” on the ability of a tenant to sell improvements which subdivision 8 of section 226-b of the Real Property Law states is not the intent of the 1983 amendments.
In light of the foregoing, the court hereby grants the motion to stay this proceeding pending resolution of the controversy at the Board.
In passing, the court observes that regulations on the handling of disputes relating to improvements (authority for which was delegated to the Board in subdivision 6 of section 286 of the Multiple Dwelling Law) have been pending for close to a year without adoption. This controversy reveals a myriad of difficult issues posed by the grant of the right to sell improvements, which the court hopes will be shortly resolved through the adoption of appropriate regulations.
Finally, even if this proceeding were not to be stayed, summary judgment would be denied as from the papers submitted, it cannot be said whether or not the landlord consented to the assignment. The exercise of the right to purchase contained in the letter of the landlord dated August 30, 1983 does not in itself constitute a rejection of the assignment, as the landlord could well become the owner of the improvements and still consent to the assignment. Hence a triable issue was presented.