OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff landlord moves to enjoin defendant tenant from either removing or dismantling improvements installed in the loft occupied by defendant at 11 West 17th Street, New York, and/or restraining her from attempting to transfer any interest in the premises by assignment or subletting.
Plaintiff became the owner of the premises 11 West 17th Street on July 6,1984. The premises were acquired from the Loft Management Corporation. Defendant Rapp first took over the premises in October 1978 when she paid the outgoing tenant the sum of $10,500 for the assignment of his lease. Defendant continued in the premises under leases, the last of which terminated on September 30, 1983. Thereafter, she continued in occupancy as a month-to-month tenant.
*256 Defendant alleges that upon her taking occupancy, she removed all existing partitions, electrical wiring and plumbing and reconstructed the loft space, subdividing it into a living area and a work space where she conducted her practice of art and dance therapy. In addition to erecting new partitions to wall the area off into rooms, she also claims to have constructed built-in closets, book shelves, mirrors and lighting fixtures, and to have renovated and improved the bathroom and the kitchen by installing new appliances.
During the early spring of 1984 tenant engaged the services of a real estate broker to procure a buyer for her leasehold interest in the loft and for the improvements. Her asking price was $85,000. Ultimately, on June 28, 1984, she entered into a contract with Mr. and Mrs. Howard Bildner to sell to them all her right, title and interest to the leasehold and to the improvements made therein for the sum of $64,000. Defendant then notified Loft Management Corporation of her agreement with the Bildners, giving the owner 30 days within which to exercise a right of first refusal for the purchase of the improvements pursuant to Multiple Dwelling Law § 286 (6). The letter was transmitted to plaintiff as the new owner, and he requested that defendant Rapp and the prospective incoming tenants complete a detailed questionnaire. The completed questionnaire was returned to plaintiff on July 18. Defendant’s attorney offered to make available to plaintiff a variety of paid bills, invoices and canceled checks corroborating her improvements. On July 30, 1984, plaintiff’s attorney replied: “Although the Owner considers the asking price of the Outgoing Tenant to be very high, he is very desireous [sic] of reaching agreement with Ms. Rapp and will negotiate in good faith to that end. Owner wants to buy the loft provided agreement can be reached as to the price. Nevertheless, this letter is not a final rejection of Incoming Tenant Bildner, who is under active investigation.”
Plaintiff landlord continues to insist that while he is willing to purchase the improvements, the value claimed for them by defendant cannot be substantiated. Plaintiff thereupon commenced this action for declaratory judgment and an injunction. Defendant, contending that the landlord has not exercised his right of first refusal within 30 days, and asserting that she is no longer occupying the premises though she continues to pay rent, has cross-moved for an order granting her the right to go through with the proposed sublet of the loft.
Although defendant is purporting to assign her “leasehold rights” together with improvements for $64,000, it does not appear that she has any leasehold rights. Her lease expired on *257 September 30, 1983. She has continued thereafter as a month-to-month tenant. The expired lease contained a provisión granting to tenant the right to sublet or assign with the landlord’s consent. On the expiration of the lease, this provision became inapplicable because defendant no longer had a leasehold to assign or sublet. Thereafter, she continued occupancy as a month-to-month tenant. The lease provisions as to assignment and subletting did not carry over. (Cf. Matter of Emtico Assoc. v Gabel, 47 Misc 2d 577, affd 25 AD2d 718.) In the Emtico case it was held that “[t]he right to sublet an apartment is not within the purview of the protection afforded by the rent control laws, and the sublet clause of a lease agreement is not projected into a statutory tenancy” (supra, p 578). The emergency rent laws permit a statutory tenant to hold over “not because he has any property right or estate in the premises, but because the emergency laws forbid his eviction.” (Wasservogel v Meyerowitz, 300 NY 125,132.) Similarly, the right to assign does not survive the expiration of the lease, and thereafter a tenant has no right to put a new party into possession under the assignment clause of the expired lease. (Bisbano v 40-42 Rest. Corp., 280 App Div 790; see also, Hart v Merriman, NYLJ, Oct. 2, 1981, p 4, col 2 [App Term, 1st Dept].)
Real Property Law § 226-b (L 1983, ch 403, § 37) provides, with respect to residential tenants, that a lease may not be assigned without the written consent of the owner. Should the owner withhold consent without cause, the sole consequence is the release of the tenant from the balance of the lease. In this case, since the tenant’s lease has already expired, she is no longer bound by the lease. That does not mean that her rights are enlarged and that she can confer a leasehold and right of occupancy upon some third person. However, Real Property Law § 226-b (8) contains the proviso that “[n]othing contained in this section shall be deemed to prevent or limit the right of a tenant to sell improvements to a unit pursuant to article 7-C of the multiple dwelling law.”
Multiple Dwelling Law, article 7-C, §§ 280-287 (L 1982, ch 349, § 1, entitled “Legalization of Interim Multiple Dwellings”, but generally known as the Loft Law) deals explicitly with buildings erected for manufacturing, warehouse or commercial purposes, and with a certificate of occupancy for such purposes, but which, in fact, had three or more units therein used for residential purposes. Multiple Dwelling Law § 286 specifies certain protections for residential occupants in loft buildings. One of those protections, designed to prevent windfalls to land *258 lords as a result of tenants moving out after having substantially renovated or reconstructed a loft, provides: “6. Notwithstanding any provision of law to the contrary, a residential tenant qualified for protection pursuant to this chapter may sell any improvements to the unit made or purchased by him to an incoming tenant provided, however, that the tenant shall first offer the improvements to the owner for an amount equal to their fair market value * * * The loft board shall establish rules and regulations regarding such sale of improvements”.
The fact that the statute gives the outgoing tenant the right to offer the improvements for sale to “an incoming tenant” carries with it no implication that the outgoing tenant may sell the improvements to anyone he or she chooses and by virtue of such sale confer a right of tenancy upon the buyer. If the outgoing tenant has no estate, she can confer no estate. Three possibilities are permitted: (1) The improvements may be sold to an incoming tenant who has been approved by the landlord; (2) the improvements may be sold to the landlord, who may utilize them himself or include them as an inducement for rental to a new tenant; or (3) both the landlord and the approved incoming tenant can decline to purchase the improvements. The landlord can then demand the removal of the improvements and the restoration of the premises to its original condition pursuant to paragraph 3 of the standard form lease. Landlord here states that he is perfectly agreeable to purchasing the improvements for their fair market value, and he has not ruled out the possibility of accepting the new incoming tenant proposed by the tenant.
There is a substantial dispute as to whether the landlord must agree to match the $64,000 offered by the proposed new tenants. It is noted that that sum includes not only such items as may properly be categorized as “improvements”, but the assignment of the leasehold as well (the equivalent of “key money”) and the sale of movable personalty. The law permits the outgoing tenant to sell only the “improvements” for an amount equal to their fair market value. The Loft Board has not yet enacted the rules and regulations called for by the statute, which became effective over two years ago.
What items qualify as “improvements” shall have to be defined with some precision. Under traditional concepts of law, the term “improvements” to the realty is well understood. The term “improvements” is defined in 42 CJS § 1, at 421 as “improvements on realty which are more extensive than ordinary repairs and enhance in a substantial degree the value of the property.” It is an ancient maxim that “quicquid plantatur solo, solo cedit” *259 — whatever is affixed to the realty, becomes part of the realty. Do improvements include “fixtures” which are items of personal property affixed to the land which retain their separate identity? (See, Matter of County of Nassau, 40 Misc 2d 384; cf. UCC 9-302 [1] [g], [j]; Lien Law § 2 [4]; W.L. Dev. Corp. v Try fort Realty, 44 NY2d 489; Monroe Sav. Bank v First Natl. Bank, 50 AD2d 314.) A statute granting a right for compensation for improvements is to be strictly construed because it is in derogation of the common law. (Madrid v Spears, 250 F2d 51.)
Some items claimed by defendant clearly come within any definition of improvements, i.e., walls and partitions, attached closets, cabinets and built-in book shelves, electrical wiring, plumbing and flooring. Other items, in the nature of removable appliances and fixtures which are not attached to the realty and may be adapted for use elsewhere are questionable, such as kitchen appliances, lighting fixtures, mirrors, blinds and carpets. Some items would clearly be removable personalty and not qualify as improvements under any definition. Before a value can be ascribed to the improvements, it must first be determined which items put in by a tenant may properly be so regarded. Up to now, no procedures have been established by the Loft Board for determining what is the fair market value. Original construction cost may have some bearing, as might replacement cost. It is difficult to ascertain precisely how a fair market value can be ascribed to improvements in one particular property which are not generally marketable. To say that an incoming tenant is prepared to pay the price does not establish the fair market value — there are tenants desperate for accommodation in a particular location who would pay virtually any demanded price regardless of value. Unfortunately, it is all too well known that a tenant may be presented with the necessity of buying a few rickety pieces of furniture and creaking appliances to get access to a dwelling. The law, however, was not designed to permit an outgoing tenant to make a killing by demanding whatever the traffic would bear for “improvements” when what is really being sold is the key to the premises. The right to confer occupancy upon another is the right of the landlord, and not the tenant.
This court notes the recent decision of Judge Lehner of the Civil Court in Krax Peripatie Apanu Stu Krokodrilus Tus Platos v Dexter (124 Misc 2d 381). In that case the landlord brought a holdover proceeding claiming that the lease had been violated by an improper assignment. Involved was a loft tenant who advised the landlord that he wished to assign the lease, that he had been offered $19,000 for the improvements and that the *260 landlord was offered the right of first refusal. The landlord claimed the fair market value was overstated and he did not give his consent to the assignment of the lease to the incoming tenant selected by the outgoing tenant. In that case, the tenant contended, as does the tenant here, that the right to sell improvements implied the right to assign the lease to anyone he wished. In that case, unlike the situation here, the tenant had an existing lease. Nevertheless, it was held that a statute providing the right to a loft tenant to sell fixtures does not confer on the tenant an unconditional right to sell a leasehold interest in the loft itself. The Legislature made it plain that the outgoing tenant does not have the unfettered right to assign to anyone he pleases.
Under these circumstances, it is clear that the plaintiff landlord has the right to the relief sought — temporarily enjoining the defendant from destroying or removing the fixtures and from assigning or subletting the premises to be used by anyone other than the defendant. The detailed consideration of what improvements are compensable, which were installed by the tenant and which by the prior owner, and what their fair market value is, is appropriately to be determined by the Loft Board which is importuned to adopt appropriate regulations and provide for a hearing on these disputed issues as soon as feasible. Failing that, the court will act on the request for declaratory judgment.