*521 OPINION OF THE COURT
Anthony T. Jordan, J.
This is a renewal motion to compel defendant, landlord of premises 315 Berry Street, Brooklyn, New York, to consent to a proposed assignment of lease by plaintiff tenants of their demised space that they converted into a residential apartment. Their earlier motion, made December 23, 1985, prior to joinder of issue, was denied as premature.
Seemingly, burdensome peripheral issues are presented by defendant involving the Loft Law (Multiple Dwelling Law, art 7-C, § 286), Loft Board Rules and Regulations, Real Property Law § 226-b (new, entitled Right to sublease or assign), limitations to granting of an injunction, stay of commencement of a Civil Court summary holdover proceeding and limitations to granting of summary judgment; all of which issues are belabored with voluminous papers and exhibits and with citation of numerous authorities in support thereof.
After a review of all of the papers, exhibits and authorities, this court holds that the parties may, by lease agreement, eliminate the umbrella coverage of the Loft Law and Loft Board Rules and Regulations with respect to their bargained greater rights of assignment of lease, even though the building thereafter becomes a registered interim multiple dwelling. This preliminary postulate is made to focus upon the simple pivotal issues in this action.
The Legislature enacted the Loft Law to remedy an evil, that of landlords’ leasing raw loft space for the facade purpose of "Artists Studio” with the knowledge and design of having tenants, in desperate need of housing, make costly, substantial improvements to the demised bare space to convert it from unrentable or low rentable commercial space to desirable habitable quarters, all with the ploy of reaping or better still, plundering as booty, the increased value of the building by their "cry of foul” and their proceeding to evict the tenants for violating the buildings’ certificate of occupancy. In this action, defendant seeks this court’s sanction of its ploy to avoid its lease obligation, bargained for by plaintiffs, by its dual claim of alleged illegality of the proposed assignment and of its protection under the Loft Law and Loft Board Rules and Regulations, by virtue of plaintiffs’ failure to first offer for sale to defendant plaintiffs’ valuable fixtures and improvements, not that defendant expressed any desire to purchase, even though it had limited the amount to be paid to plaintiffs the nominal sum of $1,500.
*522 To best determine plaintiffs’ request for summary judgment a review of the undisputed facts is essential.
The lease between the parties is the Real Estate Board "Standard Form of Loft Lease” with the usual boiler plate clauses to insure landlord’s control of the premises. As is relevant, defendant leased to plaintiffs the "Northern Half of the 7th Floor as Presently Divided” in "as is” condition for a five-year term commencing from December 1, 1980, for use as "Artists Studio and for no other purpose” and with the standard restrictive clauses, that "Tenant shall make no changes in or to the demised premises of any nature without Landlords’ prior written consent”, and that "tenant * * * shall not assign * * * this agreement without the prior written consent of Landlord”.
Significantly the rider clauses of the lease create an aura that immediately diverts one’s attention from the printed clause. It is essential to examine the rider clauses to obtain a clear perspective of the real and complete bargain of the parties. Among others, the rider provides that: plaintiffs may take possession of the space "after execution of this lease [dated Dec. 1, 1980] without being obligated to pay rent from date of such possession through February 1, 1981” (a rent concession to accommodate tenants for the necessary time to make their installations); "Tenant will supply hot water to the demised premises”; "Landlord agrees to compensate Tenant for fixtures placed in the demised premises, such compensation shall not exceed $1,500.00 or at Tenants option, Tenant may remove the fixtures or improvements Tenant made to the demised premises” (a limitation in amount irrespective of cost of the fixtures and improvements). To complete the picture of the intended use of the vacant space rented "as is” defendant agreed that it as "Landlord will not unreasonably withhold consent of the assignment or subletting of the above demised premises” (emphasis added).
This lease is not odd or singular with plaintiffs. Construction thereof is simple and elementary in the context and in the fact that at least 12 other tenants from the fourth through the seventh floors of defendant’s building are also residential tenants.
The foregoing recitation of undisputed facts is intended to fully portray the intent of the parties in the lease they entered into.
The following presentation of undisputed facts should mir *523 ror defendant’s conduct and true reasons for refusing to consent to plaintiffs’ proposed assignment. In a summary proceeding brought by defendant in the Non-Housing Part of the Civil Court of the City of New York, Kings County, and in a Multiple Dwelling Law article 7-A proceeding commenced by the tenants, including plaintiffs, defendant entered into a stipulation of settlement with the tenants that was confirmed by the court. The significant provisions thereof read as follows:
"C. Since July, 1981, the Tenants have been withholding their rents ('Fund’) as a result of accumulated grievances against Landlord * * *
"D. In order to resolve their disputes and provide for proper maintenance of Landlord’s property and proper delivery of housing services to Tenants * * * [the parties] shall jointly submit this agreement to the Court * * * [so] that this agreement becomes a Final Judgment * * *
"1. The Fund shall be distributed * * * (a) To each premises * * * a sum equal to two months rent as a rent abatement * * * (b) To each apartment, a sum equal to the amount spent by Tenants * * * for utilities * * * and a further sum for the total number of units of $2,100.00 as compensation for the purchase of electrical hot water heaters.
"2. The parties have compiled a list of repairs, services and maintenance items and completion dates therefor * * *
"3. Effective immediately, other maintenance and repair items will be handled [by landlord].
"4. Landlord will supply the following agreed upon services * * * a) * * * b) Forthwith, Landlord shall provide a further abatement * * *
"7. Landlord shall be responsible for provision of heat to each of the subject premises as if the premises were covered by the Multiple Dwelling Law and the Housing Maintenance Code * * *
"13. The Tenants shall have the right to assign the subject leases * * * with the prior written consent of the Landlord. Such consent of Landlord shall not be unreasonably withheld” (emphasis added).
With the foregoing background flashing its warning signals plaintiffs, by letter dated August 15, 1985, submitted to defendant "a copy of their proposed agreement of assignment of their lease together with [p]ertinent information about the assignees”. Of particular relevance is paragraph 2 of the agreement, wherein it is stated "Assignees shall pay to As *524 signors * * * the sum of $25,000 for said assignment”. Defendant’s counsels’ reply, dated August 28, 1985, makes no reference to the $25,000 payment for the assignment nor to the lease maximum of "$2,500.00”, should defendant wish to purchase the "fixtures or improvement”, but instead states: "Enclosed please find questionaires to be filled out by the prime tenants and the proposed assignees. Upon completion of same, kindly return the questionaires directly to this office so that we may process your request.”
The questionnaire forms by the court’s count are 46 pages. They were completed as applicable. By letter of plaintiffs’ counsel, dated October 15, 1985, the completed questionnaires were sent to defendant’s counsel. It is only on October 31, 1985, at least two months later that defendant’s counsel, in their reply to plaintiff request for consent, pointedly and for the first time referred to the $25,000 to be paid for the proposed assignment and stated: "By an examination of the information which was supplied by the proposed assignees, it becomes self-evident, that a consideration in the sum of $25,000.00 is being paid * * * Hence, I cannot agree to such an assignment * * * However, the landlord stands ready, willing and able to release the tenants from the term of the lease * * * Furthermore, if this request for assignment is to be construed to Article 7C of the Multiple Dwelling Law, the pertinent provisions of the New York City Loft Board Rules pertaining to assignment of leases and transfer and sale of leasehold improvements and fixtures have likewise not been complied with.”
Noteworthy indeed, no comment, no expression of any kind, nor even an inference of assignees unacceptability is made in defendant’s letter of refusal. However, in keeping with defendant’s past conduct and its lacking of factual grounds to deny consent, it did not hesitate to claim the protection of the Loft Law and Loft Board Rules and Regulations and to assert seemingly valid legal objections.
It is elementary law that a lease that does not limit or bar assignment is assignable. On the other hand, a lease containing a clause against assignment without the landlord’s prior consent is not assignable, even if the consent be refused whimisically or for failure to comply with a landlord’s monetary demand. (Fleisch v Schnaier, 119 App Div 815; Boskowitz v Cohn, 197 App Div 776; Ogden v Riverview Holding Corp., 134 Misc 149, affd 226 App Div 882.)
*525 However, when our authorities removed the distinction between an assignment without landlord’s prior consent that will not be unreasonably withheld and an assignment where the language clearly contains the talismanic words, "Landlord agrees” not to unreasonably withhold consent, they merely referred to the tenant’s right to seek damages from the landlord. But, there ever was unanimity of holding that a landlord’s failure to respond to a request for consent or refused consent even in good faith, but not for contractually sufficient or cognizable reasons, then the landlord’s consent was deemed unnecessary, and the courts granted tenant’s prayer for declaratory judgment approving the proposed assignment of lease. (Sarner v Kantor, 123 Misc 469; Ettinger v Canby Corp., 189 Misc 235; Singer Sewing Mach. Co. v Eastway Plaza, 5 Misc 2d 509; Arlu Assoc. v Rosner, 14 AD2d 271; and American Book Co. v Yeshiva Univ. Dev. Found., 59 Misc 2d 31, appeal dismissed 33 AD2d 546; and Bragar v Berkeley Assoc. Co., 111 Misc 2d 333, wherein the courts reviewed the good-faith refusals to consent, but held them to be insufficient.)
Since defendant made no objection to the responsibility, integrity and acceptability of the proposed assignees, this court will consider the merit of defendant’s objections (a) to plaintiffs’ failure to comply with "Article 7C of the Multiple Dwelling Law [and] the pertinent provisions of the New York City Loft Board Rules”, and (b) defendant’s attack on the proposed $25,000 payment for the assignment.
As earlier postulated by this court, neither Real Property Law § 226-b and the Loft Law and Loft Board Rules and Regulations apply to an assignment of a lease with an unexpired term, wherein the parties have bargained for a limited right of assignment. Supportive of this holding is the observation of the courts in Shapiro v Dwelling Managers (92 AD2d 52, 57) namely, "[o]f course, if the lease provides that consent shall not unreasonably be withheld, then quite independently of the statute the tenant may sublet if the landlord unreasonably withholds his consent, and section 226-b does not take that right away from the tenant” and also in Bragar v Berkeley Assoc. Co. (111 Misc 2d, at pp 337-338): "The more modern view is to the contrary particularly where, as at bar, the lease contains an express covenant by the landlord not to unreasonably withhold such consent * * * The court thus concludes that in addition to the statute the relief sought by plaintiff is appropriate under the lease provisions.”
*526 Defendant’s other contention that the court considers to be without merit is that the $25,000 proposed payment on the assignment allegedly constitutes "the passing of money * * * in contravention of New York State Law”. Cited as defendant’s authority is Gavish v Rapp (127 Misc 2d 255, 259). However, the Gavish case dealt with a month-to-month tenancy, and that court’s reference to the evil of "key money”, that this court does not deem applicable to the instant action, reads as follows "there are tenants desperate for accommodation in a particular location who would pay virtually any demanded price regardless of value. Unfortunately, it is all too well known that a tenant may be presented with the necessity of buying a few rickety pieces of furniture and creaking appliances to get access to a dwelling. The law, however, was not designed to permit an outgoing tenant to make a killing by demanding whatever the traffic would bear for 'improvements’ when what is really being sold is the key to the premises. The right to confer occupancy upon another is the right of the landlord and not the tenant.” (127 Misc 2d, at p 259.)
This action does not involve a month-to-month or statutory tenancy with an expired lease or other rent-controlled tenancy (apartment) nor does it involve an unrealistic or disproportionate amount ($25,000) to be paid by the assignees for the fixtures and improvements itemized by plaintiff, totaling $19,-000 and the additional work to be furnished by plaintiff as part of the assignment agreement, plus what should also be considered, the value of plaintiffs’ own labors in rendering raw vacant space into a desirable habitable dwelling. (See, Hashemi v Solow Mgt. Corp., 118 Misc 2d 272.)
Accordingly, plaintiffs’ motion is in all respects granted.