*619 OPINION OF THE COURT
Per Curiam.
Final judgment entered January 10, 1986 reversed, and case remanded for further proceedings consistent with this decision, with $30 costs to abide the event.
The within holdover proceeding was originally brought upon a petition alleging that tenants had sublet and/or assigned the commercial premises without consent. In an earlier appeal, this court reversed the summary dismissal of the petition and directed that the matter proceed to trial (Rossinsky Realty Co. v Farrell, NYLJ, Oct. 25, 1984, at 7, col 2 [App Term, 1st Dept]). Thereafter, landlord served an amended petition, alleging for the first time that the building premises had been registered as an interim multiple dwelling under the Loft Law (Multiple Dwelling Law § 281). Since it is now conceded that the building is an interim multiple dwelling, and since it is not seriously disputed that tenants lived in the loft since 1970 (notwithstanding that the initial lease was for commercial purposes only), this court treats the tenants as residential occupants qualified for protection pursuant to Multiple Dwelling Law article 7-C.
Multiple Dwelling Law § 286 (6) authorizes qualified loft tenants to sell improvements to the unit made or purchased by them to an incoming tenant, provided that the tenants "shall first offer the improvements to the owner for an amount equal to their fair market value.” Invoking this statutory provision, the loft tenants herein notified petitioner that they had received a bona fide offer of $10,000 for the fixtures installed in their loft, and offered to sell the fixtures to petitioner at that price. Petitioner responded that the sum of $10,000 represented "key money” rather than the value of the fixtures, and refused to consent to the proposed assignment. The loft tenants proceeded with the assignment and improvements sale to the persons presently in possession (who are parties to this proceeding), and vacated the premises.
While we perceive no issue as to the suitability of the assignees as tenants, there is an issue as to whether the amount sought by the tenants for their fixtures was, in fact, "an amount equal to their fair market value.” This issue was not developed at the proceedings below. As we construe section 286, an owner has the right to purchase the tenant’s improvements at fair value and, if he so chooses, to thwart assignment of the premises to incoming tenants. A loft tenant *620 does not have a unilateral right to assign loft space (see, Krax Peripatie Apanu Stu Krokodrilos Tus Platos v Dexter, 124 Misc 2d 381). On the other hand, if the owner declines to purchase at fair market value, and the proposed assignees are unobjectionable, the transfer must be permitted — else, the loft tenant’s right to sell improvements pursuant to section 286 would be substantially limited. Such a result is expressly precluded by Real Property Law § 226-b (8).
Accordingly, the case is remanded for findings as to what improvements were made by the loft tenants, and what their fair market value is. Since these issues are within the particular competence of the Loft Board, it would seem preferable that they be resolved by the agency (Gavish v Rapp, 127 Misc 2d 255, 260; Moskowitz v Archer, NYLJ, Feb. 14, 1986, at 12, col 6 [App Term, 1st Dept]); however, that determination is left to the discretion of the trial court. The ultimate disposition of the summary proceedings will necessarily hinge upon the findings as to fair market value and whether petitioner elects to exercise its right to purchase at that valuation (Moskowitz v Archer, supra).
Hughes, P. J., Riccobono and Sandifer, JJ., concur.