*1027 OPINION OF THE COURT
Herman Cahn, J.
This decision rules on the scope and validity of section VII (A) of the New York City Loft Board Regulations (Relating to Sales of Improvements). Said rule mandates the filing by owners of certain information relating to the sale of loft improvements. It also contains a self-operating sanction for failure to timely file. It is this sanction which is the subject of the four within proceedings.
The following proceedings have been consolidated for disposition, pursuant to CPLR 602 (a): (1) Thorgeirsdottier v New York City Loft Bd. (index No. 9292-88); (2) 126 Front Co. v New York City Loft Bd. (index No. 42094-88); (3) J&L Realty Co. v New York City Loft Bd. (index No. 11478-88); (4) J&L Realty Co. v New York City Loft Bd. (index No. 42092-88).
The facts in the various proceedings are as follows:
1. In Thorgeirsdottier, a tenant seeks an order vacating those portions of the orders of the New York City Loft Board (the Loft Board) which permits the owner to charge free market rent for his loft, for the period subsequent to the landlord’s filing with the Loft Board of a record of sale of improvements form.
In November 1986, Thorgeirsdottier, a tenant of a portion of the third-floor loft at the building addressed as 126 Front Street, filed an application for rent adjustment with the Loft Board. After administrative proceedings, the Loft Board issued order No. 645 MC No. 0381, which found that because no sale record had been filed, pursuant to section VII (A) of the New York City Loft Board Regulations (Relating to Sales of Improvements), the owner was not entitled to deregulate the loft unit pursuant to section 286 (6) of the Multiple Dwelling Law (Loft Law). The rent was fixed at $817.50.
In October 1987, the landlord filed the required improvement sales record, and also a request for reconsideration. The owner requested acceptance of the latter, nunc pro tunc, as of September 26, 1985,. when the improvements were purchased. This date is also prior to Thorgeirsdottier’s tenancy. Granting of this application would have entitled the owner to charge free market rent for the loft involved from the commencement of the tenancy. On March 3, 1988 the Loft Board issued a decision denying reconsideration of its prior order. However, it found that the owner’s late filing constituted compliance with the regulations as of October 16, 1987, and entitled the *1028 landlord to collect $2,250 in monthly rent, the higher rent sought from the first rent payment due thereafter.
2. The 126 Front Co. proceeding involves the same facts set forth above. Here, the owner of 126 Front Street initiated the proceeding against the Loft Board to vacate order No. 645, on the grounds that the higher rent was not permitted to be charged, retroactively to the commencement of the tenancy.
3. In J&L Realty Co., the owner seeks a judgment vacating Loft Board order No. 723, which denied the owner the right to market rate rental ($1,500) retroactive to the commencement of the tenancy, where the record of sales was filed late.
The loft tenant of 31 Washington Street, Brooklyn, New York, filed a rent adjustment application in May 1987, basing the application on the fact that no record of sales had been filed with the Loft Board. The owner maintained that since the tenant had moved into the loft in November 1985, after the actual purchase of fixtures and improvements from the prior tenant had taken place it was entitled to charge the tenant a market rent for the premises. The owner further alleged that it was exempt from complying with the Loft Law because the building was located within a "study area”. Though Multiple Dwelling Law § 281 (2) exempts buildings in study areas from the legalization requirements set forth in Multiple Dwelling Law § 284 (1), all other provisions of the article are applicable. Simultaneously with the filing of the answer to the tenant’s complaint, the owner filed the "Improvement Sales Record” on a nunc pro tunc basis, with reference to the improvements purchased in September 1985.
The Loft Board found that since the owner had not followed the required filing procedures, it was not entitled to deregulate the unit pursuant to Multiple Dwelling Law § 286 (6). The owner was ordered to repay the tenant, as overcharge, $24,489, for excess rent collected before the filing.
4. In the second J&L Realty Co. proceeding, the owner seeks an order vacating Loft Board order No. 660, dated August 27, 1987. This proceeding originated when the residential tenants of unit No. 2 at 31 Washington Street filed a rent adjustment application in January 1987. Due to the owner’s noncompliance with the required filing procedures, the Loft Board found that it was not entitled to deregulate the unit pursuant to Multiple Dwelling Law § 286 (6), and ordered a refund of the overcharge ($20,498) to the tenants. The Loft Board determined that until such time as the owner complies with the *1029 proper filing requirement, it could not charge free market rent.
In sum, all four cases involve residential loft units covered under article 7-C of the Multiple Dwelling Law (Multiple Dwelling Law § 280 et seq.). Under section 286, an owner has the right to purchase the loft improvements from a tenant who vacates the premises. Where the statute and regulations are followed, the owner is then permitted to charge free market rents to the incoming tenant (with some exceptions which are not relevant to the instant proceeding).
THE LAW
Section VII (A) of the New York City Loft Board Regulations (Relating to Sales of Improvements) states: "[W]ithin 30 days of the sale of improvements * * * the owner * * * shall file a Loft Board-approved Sale Record, which provides the following information: address of IMD and location of unit; name and telephone number of incoming tenant; description of improvements conveyed; purchase price and purchaser; and rent. No rights under Article 7-C, enforceable by the Loft Board, shall be effective until such filing has been made” (emphasis supplied).
In the within proceedings, the Loft Board determined that even if the report of sales was filed late, the owner could lawfully charge free market rent, but could not begin such charge until after the required sale record had been filed. The owner could not charge the free market rent retroactively to the beginning of the tenancy. It permitted the free market rent to be collected even in the middle of the tenancy, and did not require the owner to wait until the end of the term before the higher rent could be collected.
Courts generally defer to the construction given statutes and regulations by the administrative agency so long as there is a rational basis for the ruling (Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 104 AD2d 223 [1st Dept 1984], affd 66 NY2d 298). Here there is such a rational basis. The purpose behind Multiple Dwelling Law § 286 is to prevent unfair windfalls to either landlords or tenants (Gavish v Rapp, 127 Misc 2d 255, 257-258 [Sup Ct, NY County 1984]). The original tenant is entitled to a fair price for the improvements made during the period of occupancy. The regulations *1030 encourage the owner to purchase the improvements from the original tenant who made them. The landlord is entitled to recover the purchase price over a period of time by charging free market rent to the incoming tenant.
The Loft Board’s regulations quite reasonably require the landlord to file a sale record to insure that the transition to free market rent is proper. To permanently deny the landlord the opportunity to obtain free market rents by reason of noncompliance with the filing deadline would be draconian, and the regulations do not mandate such a result. In order to encourage prompt compliance, regulation VII (A) states that rent regulation remains until the sale record is filed. To permit the landlord to collect and retain free market rent prior to the filing would condone noncompliance with the law, and would vitiate its recording function. There is another practical reason for the 30-day requirement; if there is a delay of months or even years before the sale record is filed, it is more difficult for either the Loft Board or the incoming tenant to verify the genuineness of the prior sale of improvements.
The owner’s claim that Loft Board personnel stated that filing was not required because the subject buildings were in a "study area” does not change the result. Clerical personnel cannot by themselves change the law.
In light of the above, the Loft Board properly determined that the owner in each proceeding was entitled to charge free market rent prospectively only from the date of filing of the sale record form.
The Loft Board’s decision to accept the owner’s filing as of the filing date rather than nunc pro tunc as requested by the owner is within its authority to determine "any claim for rent adjustment under this article by an owner or tenant” and to issue and enforce regulations governing rent adjustments (Multiple Dwelling Law § 282 [c], [d]).
Questions involved in sales of improvements pursuant to Multiple Dwelling Law § 286 (6) are within the particular expertise of the Loft Board (Moskowitz v Archer, NYLJ, Feb. 14, 1986, at 12, col 6 [App Term, 1st Dept]). In the Thorgeirsdottier case, the court will defer to the administrative body’s determination as to the discrepancy between the former tenant’s two signatures, and will not require further investigation *1031 of the purported sale. The Loft Board did not require a hearing on this matter, and the court is reluctant to order the Board to do so now.
Accordingly, since there was a legal and rational basis for the orders made by the Loft Board, the petitions are denied in their entirety.